# KML LAW GROUP, P.C.

## A PROFESSIONAL CORPORATION INCORPORATED IN PENNSYLVANIA

**216 Haddon Avenue, Suite 406**
**Westmont, NJ 08108**
**(215) 627-1322**
**www.kmllawgroup.com**

May 7, 2020

Alim R. Bowman
10 Harrison Ave
West Orange, NJ 07052

Herbert B. Raymond
7 Glenwood Avenue
Suite #408, 4th Floor
East Orange, NJ 07017

RE:  Alim R. Bowman
Case No. 18-18610 SLM
Premises:  10 Harrison Ave West Orange NJ 07052
Secured Creditor:  The Money Source Inc.

TO WHOM IT MAY CONCERN:

The Motion for Relief from Stay and supporting documents were served on you on May 7, 2020.  Please be advised that the Motion for Relief from Stay is returnable before Judge **Meisel, Stacey L.** on June 10, 2020 at 10:00 **A.M.**

Please be guided accordingly.

Very truly yours,

KML LAW GROUP, P.C.
A Professional Corporation incorporated in Pennsylvania

**/s/ Denise Carlon, Esq.**
Brian C. Nicholas, Esquire
Denise Carlon, Esquire
KML Law Group, P.C.
216 Haddon Avenue, Ste. 406
Westmont, NJ 08108
(215) 627-1322
dcarlon@kmllawgroup.com
Attorney for Movant/Applicant

KML LAW GROUP, P.C.
A Professional Corporation incorporated in Pennsylvania
216 Haddon Avenue, Ste. 406
Westmont, NJ 08108
(215) 627-1322
Attorneys for The Money Source Inc.

---

| | |
|---|---|
| IN THE MATTER OF:<br><br>Alim R. Bowman<br><br>     DEBTOR(S), | **IN THE UNITED STATES**<br>**BANKRUPTCY COURT FOR THE**<br>**DISTRICT OF NEW JERSEY**<br><br>CHAPTER 13<br>CASE NO. 18-18610 SLM<br><br>**NOTICE OF MOTION FOR RELIEF**<br>**FROM STAY** |

TO:
Alim R. Bowman
10 Harrison Ave
West Orange, NJ 07052

Herbert B. Raymond
 7 Glenwood Avenue
Suite #408, 4th Floor
East Orange, NJ 07017

Marie-Ann Greenberg
30 Two Bridges Road; Suite 330
Fairfield, NJ 07004

US TRUSTEE
Office of the US Trustee
One Newark Center, Suite 2l00
Newark, NJ 07102


      PLEASE TAKE NOTICE THAT the undersigned attorney for **The Money Source Inc.**, will apply to

the UNITED STATES BANKRUPTCY COURT, located at **50 Walnut Street, 3rd Floor, Newark, N.J. 07102**

**Courtroom 3A**, for an Order to Grant Relief from the Automatic Stay to authorize the moving parties to prosecute

a foreclosure action for the reason that the debtors have failed to maintain their monthly mortgage payments to the

Secured Creditor as more particularly set forth in the certification submitted herewith.  Costs and counsel fees will

also be requested.

The property involved is known as **10 Harrison Ave, West Orange NJ 07052**.  The hearing on this matter is scheduled for June 10, 2020 at 10:00 a.m.

Dated:  May 7, 2020                             **/s/Denise Carlon, Esq.**
                                                Brian C. Nicholas, Esquire
                                                Denise Carlon, Esquire
                                                KML Law Group, P.C.
                                                216 Haddon Avenue, Ste. 406
                                                Westmont, NJ 08108
                                                (215) 627-1322
                                                dcarlon@kmllawgroup.com
                                                Attorney for The Money Source Inc.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**
Caption in Compliance with D.N.J.LBR 9004-1
Denise Carlon
KML Law Group, P.C.
216 Haddon Avenue, Ste. 406
Westmont, NJ 08108
Main Phone: 609-250-0700
dcarlon@kmllawgroup.com
bnicholas@kmllawgroup.com
The Money Source Inc.

CASE NO. 18-18610 SLM
CHAPTER 13
Hearing Date:
Hearing Time:
Judge: Stacey L. Meisel

In re:

Alim R. Bowman

## CERTIFICATE RE POST-PETITION PAYMENT HISTORY
## ON THE NOTE AND MORTGAGE DATED July 24, 2014

I, Gregory S Reed _____, employed as Senior Vice President _____ by The Money Source
Inc., hereby certifies the following information:
Mortgage Recorded on August 4, 2014 in Essex County, in Book 12507, at Page 6840___.
Property Address: 10 Harrison Ave, West Orange NJ 07052.

Mortgage Holder: The Money Source Inc.

Mortgagor(s)/ Debtor(s): Alim R. Bowman

POST-PETITION PAYMENTS (Petition filed on April 29, 2018)

| Amount Due | Date pymt was due | How Pymt was Applied (mo/yr) | Amount Received | Date Pymt Rec'd | Suspense Total |
|---|---|---|---|---|---|
| $2,352.27 | 5/1/2018 | May-18 | $2,437.72 | 5/8/2018 | $85.45 |
| $2,352.27 | 6/1/2018 | Jun-18 | $2,357.29 | 6/15/2018 | $90.47 |
| $2,352.27 | 7/1/2018 | Jul-18 | $2,352.27 | 7/16/2018 | $90.47 |
| $2,352.27 | 8/1/2018 | Aug-18 | $2,352.27 | 8/30/2018 | $90.47 |
| $2,352.27 | 9/1/2018 | Sep-18 | $2,352.27 | 9/28/2018 | $90.47 |
| $2,352.27 | 10/1/2018 | Oct-18 | $2,357.29 | 10/31/2018 | $95.49 |
| $2,352.27 | 11/1/2018 | Nov-18 | $2,352.27 | 11/30/2018 | $95.49 |
| $2,352.27 | 12/1/2018 | Dec-18 | $4,745.95 | 2/11/2019 | $2,489.17 |
| $2,352.27 | 1/1/2019 | Jan-19 | | | $136.90 |
| $2,352.27 | 2/1/2019 | Feb-19 | $2,437.72 | 5/31/2019 | $222.35 |
| | | NSF | -$2,437.72 | 6/5/2019 | $136.90 |
| $2,352.27 | 2/1/2019 | Feb-19 | $2,437.72 | 6/10/2019 | $222.35 |
| $2,352.27 | 3/1/2019 | Mar-19 | $2,352.27 | 7/31/2019 | $222.35 |
| $2,352.27 | 4/1/2019 | Apr-19 | $2,352.27 | 8/21/2019 | $222.35 |
| $2,352.27 | 5/1/2019 | May-19 | $2,356.23 | 10/31/2019 | $226.31 |
| | | | $51.84 | 4/6/2020 | $278.15 |
| $2,352.27 | 6/1/2019 | | | | |
| $2,352.27 | 7/1/2019 | | | | |
| $2,352.27 | 8/1/2019 | | | | |
| $2,356.23 | 9/1/2019 | | | | |

| $2,356.23 | 10/1/2019 | | | | |
|-----------|-----------|--|--|--|--|
| $2,356.23 | 11/1/2019 | | | | |
| $2,356.23 | 12/1/2019 | | | | |
| $2,356.23 | 1/1/2020 | | | | |
| $2,408.07 | 2/1/2020 | | | | |
| $2,408.07 | 3/1/2020 | | | | |
| $2,408.07 | 4/1/2020 | | | | |
| **Total:** **$56,641.68** | | | **$30,857.66** | | |

Continue on attached sheets if necessary.

Monthly payments past due:  3 months X $2,352.27
                            5 months X $2,356.23
                            3 months X $2,408.07

Less Suspense: ($278.15)

(Monthly payment+late charge) = $25,784.02 as of April 13, 2020

Each current monthly payment is comprised of:

| | | |
|--|--|--|
| Principal & Interest: | $1,237.41 | |
| R.E. Taxes: | $772.25 | |
| Insurance: | $105.92 | |
| Other: | $259.73 | (Specify: M/I _____ ) |
| Other: | $32.76 | (Specify: Shortage_____ ) |
| TOTAL | $2,408.07 | |

If the monthly payment has changed during the pendency of the case, please explain (attach separate sheet(s) if necessary)

Effective 9/01/2019 @ $2356.23 (escrow adjustment)
Effective 2/01/2020 @ $2408.07 (escrow adjustment)


PRE-PETITION ARREARS: $35,391.36

I certify under penalty of perjury that the foregoing is true and correct.

Dated: May 7 2020

The Money Source Inc.

_____
Signature
Gregory S Reed
Senior Vice President

KML LAW GROUP, P.C.
A Professional Corporation incorporated in Pennsylvania
216 Haddon Avenue, Ste. 406
Westmont, NJ 08108
(215) 627-1322
Attorneys for The Money Source Inc.

| | |
|---|---|
| IN THE MATTER OF:<br><br>Alim R. Bowman<br><br>DEBTOR(S), | **IN THE UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY**<br><br>CHAPTER 13<br>CASE NO. 18-18610 SLM<br><br>**STATEMENT AS TO WHY NO BRIEF IS NECESSARY IN ACCORDANCE WITH "LOCAL RULES OF BANKRUPTCY PRACTICE" RULE 3(C)** |

The within Notice of Motion requests relief from the automatic stay on the grounds, as set forth on the accompanying Certification, that the debtor(s) have failed to maintain their monthly mortgage payments to the Secured Creditor.

As the facts the secured creditor relies upon, as set forth on the accompanying certification, and the basis for relief from the automatic stay, do not present complicated questions of fact or unique questions of law, it is hereby submitted that no brief is necessary in the Court's consideration of the within Motion.

DATED:  May 7, 2020                          **/s/ Denise Carlon, Esq.**
                                             Brian C. Nicholas, Esquire
                                             Denise Carlon, Esquire
                                             KML Law Group, P.C.
                                             216 Haddon Avenue, Ste. 406
                                             Westmont, NJ 08108
                                             (215) 627-1322
                                             dcarlon@kmllawgroup.com
                                             Attorney for The Money Source Inc.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

**Caption in Compliance with D.N.J. LBR 9004-1( b)**

Denise Carlon
KML LAW GROUP, P.C.
216 Haddon Avenue, Ste. 406
Westmont, NJ 08108
The Money Source Inc.

In Re:
    Bowman, Alim R.

Case No:        18-18610 SLM

Chapter: 13

Hearing Date:  6/10/2020

Judge:  Stacey L. Meisel

# ORDER VACATING STAY

The relief set forth on the following page is hereby ordered **ORDERED**.

[Type text]

Upon the motion of <u>The Money Source Inc.</u>, under Bankruptcy Code section 362(a) for relief from the automatic stay as to certain property as hereinafter set forth, and for cause shown, it is

ORDERED that the automatic stay is vacated to permit the movant, to institute or resume and prosecute to conclusion one or more actions in the court(s) of appropriate jurisdiction to pursue the movant's rights in the following:

■  Real Property More Fully Described as:

   **Land and premises commonly known as, 10 Harrison Ave, West Orange NJ 07052**
   (see legal description included in the exhibits to the Motion)

☐  Personal Property More Fully Describes as:

It is further ORDERED that the movant, its successors or assignees, may proceed with its rights and remedies under the terms of the subject Mortgage and pursue its State Court remedies including, but not limited to, taking the Property to Sheriff's Sale, in addition to potentially pursuing other loss mitigation alternatives, including, but not limited to, a loan modification, short sale or deed-in-lieu foreclosure.  Additionally, any purchaser of the Property at Sheriff's Sale (or purchaser's assignee) may take any legal action for enforcement of its right to possession of the Property.

It is further ORDERED that the movant may join the debtor and any trustee appointed in this case as defendants in its action(s) irrespective of any conversion to any other chapter of the Bankruptcy Code.

The movant shall serve this order on the debtor, any trustee and any other party who entered an appearance on the motion.

*rev. 7/12/16*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1(b)**

KML Law Group, P.C.
By:  Denise Carlon, Esquire
216 Haddon Avenue, Ste. 406
Westmont, NJ 08108
215-627-1322
Attorneys for Secured Creditor:
 The Money Source Inc.

In Re:

 Alim R. Bowman
                Debtor

Case No.:        18-18610 SLM

Chapter:         13

Adv. No.:        _____

Hearing Date: 6/10/2020

Judge:        Stacey L. Meisel


**CERTIFICATION OF SERVICE**

1.  I, Crissy Powell:

    ☐ Represent the _____ in the above-captioned matter.

    ☒ am the secretary/paralegal for Denise Carlon, Esquire, who represents the  Secured Creditor in the
above captioned matter.

    ☐ am the _____ in the above case and am representing myself.

2.  On May 7, 2020, I sent a copy of the following pleadings and/or documents to the parties listed in the
    chart below:

    • Notice of Motion for Relief of Automatic Stay
    • Certification of Support in Motion of Relief from Automatic Stay
    • Proposed Order
    • Certification of Service

3.  I certify under penalty of perjury that the above document were sent using the mode of service indicated.


Dated: May 7, 2020                /S/ Crissy Powell
                        Signature

| Name and Address of Party Served | Relation of Party to the Case | Mode of Service |
|---|---|---|
| Alim R. Bowman<br>10 Harrison Ave<br>West Orange, NJ 07052 | Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Other _____<br>　(As authorized by the Court or by rule. Cite the rule if applicable.) |
| | Co-Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Other _____<br>　(As authorized by the Court or by rule. Cite the rule if applicable.) |
| RAYMOND, HERBERT B.<br>7 Glenwood Avenue<br>Suite #408, 4th Floor<br>East Orange, NJ 07017 | Attorney for Debtor | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other _____<br>　(As authorized by the Court or by rule. Cite the rule if applicable.) |
| GREENBERG, MARIE-ANN<br>30 Two Bridges Road; Suite 330<br>Fairfield, NJ 07004 | Chapter 13 Trustee | ☐ Hand-delivered<br><br>☒ Regular mail<br><br>☐ Certified mail/RR<br><br>☐ Notice of Electronic Filing (NEF)<br><br>☐ Other _____<br>　(As authorized by the Court or by rule. Cite the rule if applicable.) |

*rev. 8/1/16*

# EXHIBIT A

Loan Nu█████████████

MIN█████████████

Multistate

# NOTE

FHA Case No:
████████████████

July 24, 2014
(Date)

10 Harrison Avenue
West Orange, NEW JERSEY 07052
(Property Address)

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means First Hallmark Mortgage Corp and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **TWO HUNDRED SIXTY-THREE THOUSAND ONE HUNDRED FORTY-FIVE AND NO/100** Dollars (U.S. **$263,145.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **THREE AND SEVEN EIGHTHS** percent (**3.875%**) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on **September 1, 2014**. Any principal and interest remaining on the **1st day of August, 2044**, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at

First Hallmark Mortgage Corp
1 Executive Drive, Suite 130
Somerset, NEW JERSEY 08873

or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. $1,237.41. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other (specify)

FHA Multistate Fixed Rate Note - (10/95)
VMP-1R (0210).02
IOS, Inc.

Page 1 of 3

Borrower(s) Initials _A.B_____

Loan Nu[REDACTED]                                                                                    M[REDACTED]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of FIFTEEN calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR percent (4.000%) of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

Borrower(s) Initials _A.B._

Loan Numb███████████████                                                    M████████████████████

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_Alim Bowrd_ _____ (Seal)          _____ (Seal)
**Alim Bowman**                      -Borrower                                    -Borrower

Loan originator (organization): **First Hallmark Mortgage Corp**; NML-███████████
Loan originator (individual): **Daniel Iannucci**; NM███████████

# NOTE ALLONGE

NOTE DATE:          7/24/2014
BORROWERS:          Alim Bowman
                    29 King Street, Apt. 1 West Orange, NJ 07052

MORTGAGE AMOUNT:  $263,145.00
LOAN NUMBE ███████████

FOR VALUE RECEIVED, FIRST HALLMARK MORTGAGE CORP.
HEREBY ASSIGNS THIS NOTE TO:

Pay to the order of: The Money Source, Inc

Without recourse

BY:    First Hallmark Mortgage Corp.

Bruno Viscariello, President
First Hallmark Mortgage Corp.

Inst. # 2017109713 - Page 1 of 3



## Essex County Register Document Summary Sheet

| Transaction Identification Number | 3240712 | 2680834 |
|---|---|---|

ESSEX COUNTY REGISTER OF DEEDS & MORTGAGES

HALL OF RECORDS - ROOM 130

465 DR. MARTIN LUTHER KING BLVD

NEWARK NJ 07102

**Recorded Document to be Returned by Submitter to:**

PHELAN HALLINAN DIAMOND & JONES, PC

400 FELLOWSHIP ROAD

MOUNT LAUREL, NJ 08054

**Official Use Only**

```
        DANA RONE
REG. OF DEEDS & MORTGAGES
      ESSEX COUNTY
       New Jersey

     DOCUMENT TYPE
          3
   INSTRUMENT NUMBER
      2017109713
      RECORDED ON
      Dec 18, 2017
      12:40:35 PM
     Total Pages: 3

NJ PRESERVATION ACCOUNT $10.00
REGISTER RECORDING FEE  $30.00
EFILING CONVENIENCE FEES $3.00
TOTAL PAID           $43.00
INV: 176604 USER: BB
```

| | |
|---|---|
| **Submission Date** *(mm/dd/yyyy)* | 12/13/2017 |
| **No. of Pages** *(excluding Summary Sheet)* | 1 |
| **Recording Fee** *(excluding transfer tax)* *(Convenience Charge of $3.00 included)* | $43.00 |
| **Realty Transfer Tax** | $0.00 |
| **Total Amount** | $43.00 |

| **Document Type** | MTGE ASSGN |
|---|---|

**Electronic Recordation Level**    L2 - Level 2 (With Images)

**Municipal Codes**

ESSEX COUNTY                99

**Bar Code(s)**



2 2 25 4 3

**Additional Information (Official Use Only)**

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ESSEX COUNTY REGISTER FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

## Essex County Register Document Summary Sheet

| | |
|---|---|
| **Type** | MTGE ASSGN |
| **Consideration** | |
| **Submitted By** | SIMPLIFILE, LLC. (SIMPLIFILE) |
| **Document Date** | 12/05/2017 |

**Reference Info**

| Book ID | Book | Beginning Page | Instrument No. | Recorded/File Date |
|---|---|---|---|---|
| | 12507 | 6840 | 14054583 | |

**MTGE ASSGN**

| MORTGAGOR | Name | | Address |
|---|---|---|---|
| | ALIM BOWMAN | | |
| | MORTGAGE ELECTRONIC REGISTRATION SYSTEMS INC "MERS" AS NOMINEE FOR | | |

| ASSIGNEE | Name | | Address |
|---|---|---|---|
| | THE MONEY SOURCE INC | | |

**Parcel Info**

| Property Type | Tax Dist. | Block | Lot | Qualifier | Municipality |
|---|---|---|---|---|---|
| | | | | | |

*** DO NOT REMOVE THIS PAGE.**
*COVER SHEET [DOCUMENT SUMMARY FORM] IS PART OF ESSEX COUNTY REGISTER FILING RECORD.*
*RETAIN THIS PAGE FOR FUTURE REFERENCE.*

**NEW JERSEY**
COUNTY OF ESSEX
LOAN ██████

PREPARED BY: THE MONEY SOURCE, INC.
WHEN RECORDED MAIL TO: THE MONEY SOURCE, INC., 500 SOUTH BROAD ST. STE. 100A, MERIDEN, CT 06450, PH. 208-528-9895

# ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the receipt whereof is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR FIRST HALLMARK MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS**, located at P.O. BOX 2026, FLINT, MICHIGAN 48501-2026, Assignor, does hereby grant, bargain, assign, transfer, and set over unto **THE MONEY SOURCE, INC.**, located at **500 SOUTH BROAD STREET SUITE 100A, MERIDEN, CT 06450**, Assignee, its successors and assigns, all of Assignor's interest, with all obligations described and all rights accrued or to accrue under that said Mortgage, described as follows:

Said Mortgage dated JULY 24, 2014 in the sum of $263,145.00 executed by **ALIM BOWMAN**, Mortgagor, to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS NOMINEE FOR FIRST HALLMARK MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS**, Original Mortgagee, and recorded on **AUGUST 04, 2014** as Document No. 14054583 in Book 12507 at Page 6840 in the Office of the County Clerk in and for the County of ESSEX, State of NEW JERSEY.

The property being located in the TOWNSHIP OF WEST ORANGE and commonly known as **10 HARRISON AVENUE, WEST ORANGE, NJ 07052.**

TO HAVE AND HOLD the same unto the said Assignee, its successors or assigns, forever, subject to the provision in the said Indenture of Mortgage mentioned; and Assignor does hereby make, constitute, and appoint the said Assignee its true and lawful attorney, irrevocable, in its name, or otherwise, but at its proper costs and charges, to have, use and take all lawful ways and means for the recovery of all the said money and interest; and in case of payment, to discharge the same as fully as it might or could do if these presents were not made.

TOGETHER WITH all rights accrued or to accrue under said Mortgage.

IN WITNESS WHEREOF, the undersigned caused this Instrument to be executed this 12/5/2017.

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR FIRST HALLMARK MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS,**

Name: Dan Cooper , **ASSISTANT SECRETARY**

STATE OF Connecticut                          COUNTY OF New Haven ) ss.

I, SUZANNE SURPRENANT, the undersigned Notary Public, certify that on 12/5/2017 personally appeared Dan Cooper , personally came before me and stated to my satisfaction that this person was authorized to and did execute this instrument as ASSISTANT SECRETARY of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR FIRST HALLMARK MORTGAGE CORP., ITS SUCCESSORS AND ASSIGNS the entity named in this instrument and is the act of the entity named in this instrument.

SUZANNE SURPRENANT (COMMISSION EXP. 7/31/2022 )
NOTARY PUBLIC

> Suzanne J. Surprenant
> NOTARY PUBLIC
> State of Connecticut
> My Commission Expires 7/31/2022

Page 1 of 1                          MIN
                                     MERS PH

# RECORDING INFORMATION SHEET

**ESSEX COUNTY REGISTER'S OFFICE**
**HALL OF RECORDS , ROOM 130**
**465 MARTIN LUTHER KING Jr. Blvd**
**NEWARK NJ 07102**

| INSTRUMENT NUMBER:<br>**14054583** | DOCUMENT TYPE :<br>**MORTGAGE** |
|---|---|

**Official Use Only**

WILLIAM NARVAEZ
DEPUTY REGISTER
ESSEX COUNTY, NJ

INSTRUMENT NUMBER
14054583
RECORDED ON
August 4, 2014   09:43 am
BOOK:12507 PAGE:6840

MC

**Return Address** *(for recorded documents)*
FIRST HALLMARK MORTGAGE CORP
1 EXECUTIVE DRIVE

SUITE 130
SOMERSET NJ 08873

| | |
|---|---|
| **No. Of Pages** *(excluding Summary Sheet)* | 7 |
| Recording Fee *(excluding Transfer Tax)* | $90.00 |
| **Realty Transfer Tax** | $0.00 |
| **Amount Charged**      **(Check # 1843)** | $90.00 |
| **Municipality** | WEST ORANGE |
| **Parcel Information** | **Block**<br>**Lot** |
| **First Party Name** | ALIM BOWMAN |
| **Second Party Name** | FISRT HALLMARK MORTGAGE CORP |

MAIL COPY _____
NO COPY _____
ENVELOPE _____

**Additional Information (Official Use Only)**

ADDITIONAL STAMPINGS _____

***************************** *DO NOT REMOVE THIS PAGE.* *****************************
*COVER SHEET (DOCUMENT SUMMARY FORM) IS PART OF ESSEX COUNTY FILING RECORD*
********************* *RETAIN THIS PAGE FOR FUTURE REFERENCE.* *********************

Return To:
**First Hallmark Mortgage Corp**
**1 Executive Drive, Suite 130**
**Somerset, NEW JERSEY 08873**

This instrument was prepared by:
**First Hallmark Mortgage Corp**
**1 Executive Drive, Suite 130**
██████████ **EY 08873**

Preparer:

———————————————————— [Space Above This Line For Recording Data] ————————————————————

**State of New Jersey**

# MORTGAGE



THIS MORTGAGE ("Security Instrument") is given on **July 24, 2014**.

The Mortgagor is **Alim Bowman**, ("Borrower").

This Security Instrument is given to **Mortgage Electronic Registration Systems, Inc. ("MERS")**, (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as mortgagee. MERS is organized and existing under the laws of **Delaware**, and has a mailing address and telephone number of **P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS**.

**First Hallmark Mortgage Corp**, ("Lender")
is organized and existing under the laws of **NEW JERSEY**,
and has a principal office and mailing address of **1 Executive Drive, Suite 130, Somerset, NEW JERSEY 08873**.

Borrower owes Lender the principal sum of **TWO HUNDRED SIXTY-THREE THOUSAND ONE HUNDRED FORTY-FIVE AND NO/100** Dollars (U.S. **$263,145.00**). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **August 1, 2044**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. This Security Instrument and the Note secured hereby are subject to modification (including changes in the interest rate, the due date, and other terms and conditions), as defined in New Jersey Laws 1985, ch. 353, Section 1 et seq., and upon such modification, shall have the benefit of the lien priority provisions of that law. The maximum principal amount secured by this Security Instrument is **$263,145.00**. For these purposes, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in Essex County, New Jersey:

**See Attached Schedule C**

which has the address of:    **10 Harrison Avenue**
**West Orange, NEW JERSEY 07052**, ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal

**FHA New Jersey Mortgage with MERS – 4/96**

IDS, Inc.

Page 1 of 7

Amended 2/01

Borrower(s) Initials  _AB_

title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 12 CFR Part 1024, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety, or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es).]

☐ Condominium Rider        ☐ Graduated Payment Rider    ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider    ☐ Growing Equity Rider    ☐ Other:

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_____
                                    -Witness                    _____
                                                                                        -Witness

_____
                                    (Seal)                       _____
**Alim Bowman**              -Borrower                                                    (Seal)
                                                                                        -Borrower

**STATE OF NEW JERSEY,** _____ County ss:

On this _24th_ day of _July_, _2014_, before me, the subscriber, personally appeared **Alim Bowman** who, I am satisfied, is/are the person(s) named in and who executed the within instrument, and thereupon acknowledged that he/she/they signed, sealed and delivered the same as his/her/their act and deed, for the purposes therein expressed.

_____
Notary Public

                                                 **TARA M. ROACHÉ**
Loan originator (organization): **First Hallmark M**          LS #        **PUBLIC OF NEW JERSEY**
Loan originator (individual): **Daniel Iannucci; NM**                    **...mission Expires 1/24/2018**

FHA New Jersey Mortgage with MERS – 4/96

ICS, Inc.                              Page 7 of 7                          Amended 2/01